which is Builders Bank v. FDIC. Mr. Grossman. Good morning. May it please the Court. My name is Richard Grossman. I represent Builders Bank. I thought I would begin today by describing what is not in dispute in this case. First, there is no dispute that bank examinations and the resulting ratings are mandated by the FDIC. There is no dispute that the Federal Financial Institute Examination Council, which was created by what I'll call FIFAC. Counsel, I'm worried about whether we have a case properly before us. The APA provides for review only of final agency decisions. And this rating appears to be an input into other decisions rather than a decision by itself. So why is it reviewable now? Your Honor, I believe that the APA applies to all material supervisory determinations. No, it does not. That's just wrong. Look at the language of the APA. It says it applies to all final agency decisions. It does not apply independently. It does not allow review of decisions taken on the way to some final decision. That's just what it provides. And the Supreme Court has insisted that courts of appeals respect that limit. So I repeat my question. Why is this a final agency decision rather than an input into some other agency decision? I'm not sure what other agency decision we're talking about. Each FDIC might decide to close the bank, for example. It might decide to change the premium for insurance. I gather that there is some link between this rating and the insurance, but you're not contesting what the insurance rate is, how much the bank pays for its coverage. What we are contesting is that Could you tell me why this is a final decision? It's a final decision, Your Honor, because if you look at the FDIC, there's a specific section that mandates that banks are reviewed no less than one time a year, and that there is a resulting examination rating. There is nothing else. And so what? Suppose the FDIC, at the end of this examination, sends the bank a letter saying, We think that the bank's use of pews on its stationary is deplorable. It's not really professional. Would that be reviewable under the APA? No, but it's not a material supervisory determination. There is no authority to review a, quote, material supervisory determination. It's not in the APA. The APA talks about final decisions. Federal agencies send critical letters all the time, and we frequently hold that they're not reviewable. I'm trying to figure out why you think this one is a final decision. I understand why you think it's critical, and it might well be material as an input into some other decision, like the decision about the rate the bank pays for coverage. But I don't understand why it is itself a final decision. What I'm suggesting is that the bank examination rating is something that the FDIC Act actually mandates, and in and of itself, it is meaningful in that the bank, in other words. I'm not asking whether something is meaningful. I think you're just obviously unaware of some basic principles of administrative law. The Federal Securities Act requires the SEC to review the adequacy of many filings. We have held, however, that an SEC order saying that a particular filing is inadequate is not reviewable because it's not a final decision on anything. I don't believe even the FDIC contested that. I know the FDIC hasn't argued this, but this is something that having a reviewable subject before a court is very important. The Supreme Court has insisted that we follow the final decision requirement, and I'm trying to figure out why this is a final decision as opposed to an input into one. I can tell you that I believe that the FDIC Act and FIFAC, when you consider the two of them together, Congress was very concerned about how banks are examined, and it's highly relevant as to how the banking system functions. You're just not addressing my question. The only purpose of a bank examination rating that I can tell from anything that's in the record is to determine the level that you pay as a premium for insurance in the FDIC. So why don't you challenge that decision? If the FDIC used this CAMELS rating to change how much money the bank has to pay, why don't you challenge that decision? That looks to me like it's a final decision. I believe that they are equivalent. In other words, the exam rating that you get determines where you— That's the purpose of this whole enterprise, is to examine the bank, determine what its risk is to the FDIC fund that protects all the banks, and assign a rating to it so that we know how much they should pay and where it lies on the risk scale. So that issue wasn't briefed, and if Your Honor would accept a supplemental brief on that issue, I certainly would be willing to undertake it, and I would hope that you would, because it's not an issue that was briefed by any of the parties. Let me ask you a different sort of question. Sure. There's a puzzle, paragraph 22 of your complaint, where you said, plaintiff had only one non-performing loan, and its portfolio of foreclosed properties had an embedded gain of over $9 million. What is that supposed to do? Well, the reason—  But how does that generate some number? If Your Honor looks at the uniform rating system, there is a very detailed, concrete description of exactly what you're supposed to achieve in order to be in any particular category. The rating we got, that is the bank got, was, let's say— I'm not going to refer to the specific number, because that's supposed to be private, but let's say it was troubled. So we say, what we're contesting here is that this rating that they gave us was arbitrary and capricious, because if you look at what the bank was doing, it was not a threat in any way. Okay, so what exactly is the FDIC supposed to do with the fact you had one non-performing loan? Does that translate into a number? Again, if you look at the chart, and we have a chart on pages 8 and 9 of our reply brief, which describes each of the categories, there are detailed criteria for where you're supposed to fit there. So are you saying that they failed to give proper weight to the fact you had only one non-performing loan? There are many factors. We didn't only rely on those. We said that, A, we have only one non-performing loan. B, we have superior asset quality. Well, okay, the other point in this paragraph, your portfolio foreclosed properties had an embedded gain of over $9 million. What does that mean? Does that mean these properties you foreclosed on are worth $9 million, have a sale value of $9 million, or what? It meant that we had a gain of that much over what we actually lost, or would, in other words... You mean that you lost on the loan? You had to foreclose on a loan. They didn't pay. Right, we foreclosed on it, and when we... But somehow you got, you come out $9 million ahead? That's correct, because what, in fact... Now, do they have some algorithm or something which will translate an embedded gain into, it'll contribute to the determination of how much insurance you have to pay? It contributes to the determination. If you look, the ratings are supposed to... The composite ratings are not an average of the component ratings. It's an overall risk profile determination, and when you look at it and you say probability of failure, safety and soundness, severity and weakness of problems, what we're saying is that if you look at the whole picture, their conclusion that we're troubled, which has its own definition of, you know, it's possible... Well, did they just refuse to look at the non-performing loan or the embedded gain, or that they evaluated them differently from your evaluation? The whole purpose of several... Did they discuss them? We don't even know what they did, because there's nothing in the record without discovery. We can't tell what they did or didn't do. What we're saying is if you give us a rating that says we're troubled and you look at what we are, in fact, doing, that conclusion is arbitrary if you pay attention to what the UFIRS standards are. And what we have said before is that these standards are at least as concrete and detailed as those that other courts have found to be sufficient to conduct a review. There is a strong presumption of judicial review for any final agency action, assuming that this is final agency action. Apparently Judge Easterbrook has a problem with that, but if you consider that this is a final agency action, we're entitled to judicial review under the presumption it can only be defeated by something that Congress has done to say we don't want the court to even tamper with this. The district court and the FDIC contend that ILSA, the International Lending Supervision Act, bars any consideration of a capital of an exam rating. What we're saying is ILSA is irrelevant to this case. ILSA deals with capital directives, period. What's off limits under ILSA is the ability of the FDIC to cause banking institutions to achieve and maintain adequate capital. The focus of Congress's concern in that area is an enforcement action. That is to cause the bank, they send a letter and they say this is the capital level that we think you ought to have and here is our order that you maintain it, you achieve it and maintain it. This is a bank exam rating. It's an evaluative tool. It has nothing to do with what Congress's concern was under ILSA, which was we don't want, and if you read the legislative history of ILSA, it came about when banks had over lent to Latin countries and those countries then looked like they weren't going to be able to repay the loan. So there was a case, Bel Air, and in that case the court actually said, well, we reviewed it and we think that the FDIC's order to maintain a certain level of capital is not justified. Congress was upset about that and they said we're going to pass a law for the first time. We're going to say this kind of order, a capital directive, which orders a bank to have a specific amount of capital is off limits. The courts, you can't interfere with it. The bank exam rating is simply a tool, as I said, to determine how much money you pay under the insurance provision. Why isn't that another method of ensuring that banks maintain adequate capitalization under 3907? Because that proves too much, Your Honor. If that's another method, then everything that the FDIC does, if they issue a letter or they say we don't like what you're doing, then it falls under 3907 because, after all, as Judge Easterbrook said, they send letters all the time, they can do this, they can do that. If all of those fall under 3907, then everything is off limits that the FDIC does. That can't be the case. Everything that they do to establish or ensure that banking institutions maintain adequate capitalization is therefore discretionary and unreviewable under the APA, whether final or not. Well, I believe this is a final agency action, and I see that my time is up. I'll address that. Well, I'll give you another minute after. Okay. Well, why don't you come in? Okay, yeah. I reserve five minutes. Mr. Brooks? Good morning, Your Honors, and may it please the Court. Joseph Brooks from the FDIC Litigation Unit. I'd like to just briefly address Judge Easterbrook's concern first. It may well be true the FDIC does not dispute that there's not a final agency. Could you raise your voice, please? Yes, it may well be true the FDIC does not dispute that there may not have been a final action here. That would be one basis for non-reviewability. We chose to litigate an alternative basis for non-reviewability, and, of course, that's that there is absolute discretion in the agency to make the decision here, and there are no meaningful standards pursuant to which this Court could judge whether or not the FDIC properly exercised that decision. Well, what if the agency ignored, for example, the fact that these foreclosed properties had conferred a big benefit on the bank? Would there be no remedy for that? Well, Your Honor, the first point that I would make is on paragraph 22, as we understand it, all that's addressed is capital. I'm sorry, you understand that? Yeah, I wish you'd address it. I'm having trouble hearing you. You need to raise your voice. Certainly, Your Honor. There's a lot of air conditioning hum up from the ceiling. It doesn't have anything to do with those microphones. Certainly, Your Honor. They record your voice. Certainly, Your Honor. The threshold point is to the extent that the factor mentioned in paragraph 22 impacts on whether or not the capital adequacy was properly determined by the FDIC, that is not subject to judicial review. That is ILSA. That's the Frontier Bank case. Counsel, your argument seems to be that if something is committed to agency discretion by law, that's a shortfall of federal jurisdiction. And that's actually what the district court said. This case was dismissed for lack of federal jurisdiction on a motion under Rule 12a1. Why do you think that's a jurisdictional topic? Two reasons, Your Honor. The first one would be the Arnow decision, and the second one would be the same decision. Could you try that again? What decision are you relying on? Arnow, A-R-N-O-W, the NRC case in our brief, a decision by this court which you realize the Supreme Court has said it's not jurisdiction. I'm not aware that the Supreme Court has explicitly said that, Your Honor. It has reviewed on the merits a number of cases where courts of appeals thought that there was a commitment to agency discretion by law. And it's entered judgments on the merits. Well, Your Honor, even if I accept that premise for purposes of this argument, for purposes of this appeal, as we point out in our brief, it doesn't change anything because then the case would have been appropriately dismissed under 12b-6. Certainly the issue of whether this was reviewable. Look, Counsel, there's a big difference between a jurisdictional dismissal and a 12b-6 dismissal. 12b-6 dismissal, the litigant loses. A jurisdictional dismissal means that the case should be presented and argued at some other time or in some other way. It doesn't end the decision on the merits. A jurisdictional dismissal would leave the bank free to contest the insurance rate, for example, in a separate proceeding. Well, perhaps, Your Honor, but that means this court could affirm the district court's decision. No, we can't affirm a jurisdictional dismissal on the merits. There had to be some appeal, right? If what you want is a decision with preclusive force, you had to file your own appeal. We're not supposed to be modifying judgments to make them more favorable to a party that didn't file its own notice of appeal. Well, Your Honor, the issue that... That's a real jurisdictional rule. Right. Well, the issue that was before the court is whether or not the question presented here is reviewable, whether or not the FDIC's exercise of discretion here is subject to review under the APA. There are no published decisions that I'm aware of within this circuit that hold that that's not a jurisdictional issue. There are two that hold that it is. And I'm not aware of an interim Supreme Court case which has held on the merits that decisions such as it made in Heckler v. Cheney, decisions such as it made in Lincoln v. Vigil... Heckler v. Cheney was decided on the merits by the Supreme Court. It was not dismissed for want of jurisdiction. It really was. That's what happened in Heckler v. Cheney. And then in the Lincoln v. Vigil case, all the Supreme Court held was that it was not reviewable under the APA. But in any event, we argued jurisdiction based on the precedence in this circuit. If the court holds that that was improper, there's nothing I can do about that now. Are you saying there's nothing the FDIC can do that would be litigable? Your Honor... This total, you could charge this company, you know, the infinite rate of insurance? Your Honor, as Judge Easterbrook correctly pointed out, that issue, whether the insurance premium that's being charged is a proper insurance premium, is not even before this court. The only issue... I'm just asking you whether you think there is nothing that the FDIC could do that would be litigable. Oh, there's lots of things the FDIC could do that could be litigable, Your Honor. In the first instance, the only issue here, in our view, based on the complaint in the opening brief, is whether it can establish a minimum capital requirement. But even if you go to the issue of whether it can give a certain examination rating, I would direct the court's attention to the only possible alternative source for a standard of review, and that's UFERS, Your Honor. And here's what it says. This is in the supplemental appendix, A3, at page 752. It says, under the UFERS, each financial institution is assigned a composite rating based on evaluation of the six essential components. So that's the first point. The rating is based on the components. Then critically, just a few inches down the page, Your Honor, it says, the composite rating generally bears a close relationship to the component ratings assigned. When assigning a composite rating, some components may, and that's a critical word under both this court's decision in Arnow and the decision cited by the other parties in the other case, may. That means permissive discretion. But it goes on. May be given more weight than others depending on the situation at the institution. In general, assignment of a composite rating may incorporate any factor that bears significantly on the overall condition. Your Honor, not only is that not a standard of review, that's the precise opposite of a standard of review. That is a provision that was drafted to give the agency discretion. And as you work your way through UFERS, it gets even better, Your Honor. For example, if you go to the composite ratings themselves, let's look at numbers three and four, for example, just by way of examples. It says financial institutions may exhibit some degree of supervisory concern in one or more of the component areas. May range from moderate to severe. If you work your way through, the word may appears six different times in those two elements alone. And it gets even better because when you go through the components that you need to look at. Counsel, what happens if the FDIC concludes that this bank needs, say, $3 million in net capital, and then simply commits an addition error in determining that the bank doesn't have it? You think that's completely unrevealable because committed to agency discretion by law? No, Your Honor. I think that would be a different issue. That may even perhaps raise to the level of a constitution. That would be a what? It would be a different issue. The district court, that's not remotely what the district court said. The district court said that if the FDIC's calculation of minimum capital plays or could play any role in the rating, then the rating is unreviewable, period. So I've given you a situation where the FDIC's calculation or determination of minimum capital plays an explicit role in the rating. And you're now saying it is reviewable. Well, you're now not defending the district court's decision. You're saying it's wrong. Your Honor, I am defending the district court's decision, and here's why. There was no suggestion of anything like a mathematical miscalculation. What's being challenged here is the expertise and judgment. The bank contends that the FDIC's rating or the FDIC's decision about how much net capital it has to have is not what's responsible for this rating. Now, the bank may be right or wrong, but given the answer to the question that you've just given me, it sounds like the bank is entitled to a determination of whether it's right or wrong. A determination of whether a miscalculation was made? No. Your Honor. Just listen to my question. Well, I have your question, Your Honor, but if you look at what the district court did. The bank says that the FDIC's decision about how much net capital it has to have is not responsible for the rating, and that it does not want the judiciary to review the FDIC's decision about how much net capital it needs, that it wants review of other issues. The district court said that's irrelevant because as long as net capital played any role at all in the rating, the rating is not reviewable. It sounds like you have now abandoned the district court's rationale.  Your Honor, what I said was is that our position is if you read the complaint, if you read the opening brief in this case, this case has never been about anything but challenging the FDIC's assessment of capital adequacy. We then had a reply brief in which for the first time new issues were raised, and they were raised based on the fact that a motion to amend had been filed below that was denied. However, at no point prior to the reply brief was that ever challenged. What I'm saying is, having not had an opportunity to respond to a reply brief, and in responding to your question, which assumed that these other factors are in play, that if you look at the UFERS, which all is relied upon, under each component, whether capital or not, the same rubric is set up. A list of non-exhaustive factors, no guidance on how to weigh those factors. And so what I'm saying is, if this court were to determine, incorrectly in the FDIC's view, that the bank can now argue that other factors are in play, the result would still be the same, because under the decision in Deluca, when you have non-exhaustive factors, and when you have no guidance in whether it's a statute or a regulation about how to weigh those factors, that exudes deference to the agency. What's a non-exhaustive factor? Yes, and I'd even go a step further. Non-exhaustive list of factors, Your Honor. In other words, it says in the UFERS that the decision must be based on the following, but not limited to the following factors, a non-exhaustive list, precisely what was in Deluca. And I'd also point out what the Supreme Court said in Lincoln v. Vigil. It said agency decisions are not subject to judicial review where, quote, it requires a complicated balancing of a number of factors which are peculiarly within its expertise, unquote. That is precisely what UFERS does under each of the components. It lists eight or more factors, a non-exhaustive list, which again was pivotal under this court's decision in Deluca, because, of course, any other factor can come in. That's the language I read earlier. UFERS is the precise opposite of a meaningful standard of judicial review. It uses the word may repeatedly. It has non-exhaustive lists of factors. It does not give any guidance on how to weigh those factors. This is precisely the way that an agency or Congress would draft so-called uniform standards that were intended to vest the agencies who were under those statutes with unreviewable discretion. Indeed, if anything, UFERS exudes more discretion than ILSA. So just so that I'm clear, we're not changing our position. The FDIC's position is that if you read the complaint, if you read the opening brief, nothing has ever been challenged here but the FDIC's capital determination. Not an arithmetic error, but a challenge to the expertise and the opinions that were reached on this subjective issue by the FDIC's examiners. But even if this court were to allow not an 11th but a 13th hour change in the claim through the reply brief to bring the other factors in, we would have gladly litigated that issue below if it had been raised because under UFERS, you must reach the same conclusion. Repeatedly, under each of the components, we are given a non-exclusive list of factors. We are given no guidance on how to weigh them, and these factors are all factors such as capital weight, risk associated with things, all factors, if you look at them carefully, that are peculiarly within the expertise of the FDIC. This is a classic case where Congress delegated authority to FDIC and FDIC drafted essentially a regulation or a program statement that exudes deference to the agency. I see my time is up, but I'd be happy to answer any other questions. Okay. Thank you, Mr. Grossman. Mr. Brooks? Thank you for your time, Your Honors. I'm sorry. I'm sorry I went backwards. Yes, Mr. Grossman's turn. All right. Sorry. So I'm going to read from the FDIC's brief. It says that FIFAC was created by Congress, quote, to prescribe uniform principles and standards for the federal examination of financial institutions to promote uniformity. That's from their brief. The idea of standards is in and of itself the cabining of discretion. That's what the whole point of FIFAC was, that there was a tower of babble between the various states and federal governments that were reviewing bank examinations, and there was no standard which you could tell, you can generally accept this is a one, this is a two, this is a three. So Congress mandated these standards. The idea of standards itself is the cabining of discretion. That's the point. And if you look at, counsel suggests that they're vague and not specific enough, but if you look at the Supreme Court's decision in Morgan Stanley where they said just and reasonable is a standard, mock mining in which Justice Kagan says that where there's any kind of a standard at all, you're to accept it. The Supreme Court's Kucana case, which says that where there's a divergence of opinion as to whether it could be reasonably construed to be reviewable or not, you choose the one that says that there is review, right? Justice Kagan in mock mining says judicial review of executive action is the norm. That's where we go when we're not sure. There's a 771-page FDIC manual of examination policies. There's all kinds of standards. And if you look at UFERS itself, you'll see that the composite ratings for each of the five levels have what I would call standards. Any weaknesses are minor. They sound in every respect. Exhibit a combination of weaknesses that range from minor to severe. Courts do this kind of work every day. It certainly is as concrete as something like just and reasonable or the other standards that are used in the cases that we cite in our brief. Now, there is no ment—Counsel suggests that— You have to wind up your— Okay. We did not challenge the bank's capital. When you look at paragraph 22, we used that phrase to suggest that's but one index of the arbitrariness of the rating because if you look at the FDIC's own definition of well-capitalized, we were well-capitalized. Okay. Well, thank you, Mr. Grossman.